UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

J. MICHAEL MALONEY and                           04-CV-0750E(Sc)
LINDA R. MALONEY,

                    Plaintiffs,

                                                  MEMORANDUM

          -vs-
                                                       and

McFARLAND JOHNSON, INC.,                              ORDER[1]
C&S ENGINEERS INC.,
CENTRAL AVIATION, INC. and
S&S AVIATION, INC. d/b/a Rice Lake Air Center,

                    Defendants.

———————————————————————

## INTRODUCTION and BACKGROUND

On September 16, 2002, commercial airline pilot, J. Michael Maloney began to execute a take-off in his private aircraft from Runway 31 at the Canandaigua Airport in Canandaigua, N.Y. Momentarily after take-off the aircraft suffered a complete loss of engine power, necessitating an emergency landing in an area of the airport containing a surface water retaining pond located near the runway. Maloney was seriously injured.

He and his wife, Linda R. Maloney (hereinafter "the plaintiffs"), residents of Illinois, commenced this diversity action on September 16, 2004 wherein they sued defendants S&S Aviation, Inc. d/b/a Rice Lake Air Center, ("Rice Lake") and Central Aviation, Inc. ("Central") (both Wisconsin corporations) on a theory of negligent

———————————————

[1] This decision may be cited in whole or in any part.

maintenance and repair with respect to work performed on the aircraft.  Defendant McFarland Johnson, Inc., ("McFarland") (a New York corporation) was sued on a theory of negligent design and engineering with respect to the design and construction of the runway and retaining pond.

McFarland answered (Dkt. #5) on December 10, 2004, interposing various affirmative defenses and cross-claiming against Rice Lake and Central for contribution and/or indemnification.  Central answered the complaint on January 3, 2005, interposing various affirmative defenses and cross-claiming against Rice Lake and McFarland for contribution and/or indemnification (Dkt. #11).   In lieu of an answer, Rice Lake has moved to dismiss the complaint against it for lack of personal jurisdiction (Dkt #17).  On April 6, 2005, Central also made a motion for summary judgment for lack of personal jurisdiction (Dkt. #28).

On September 15, 2005, plaintiffs made a motion for leave to serve and file an amended complaint (Dkt. #54).  A stipulation and order was filed on November 3, 2005 which allowed the filing of an amended complaint in order to reflect Rice Lake's corporate name as S&S Aviation, Inc. and to add C&S Engineers, Inc. ("C&S") (a New York corporation) as a defendant.   The stipulation also preserved the existing defendants' affirmative defenses and their positions regarding lack of personal jurisdiction as set forth in the pending motions (Dkt. #61).  The amended complaint was filed on December 16, 2005 (Dkt. #66).  Like McFarland, C&S was sued on a theory of negligent design and engineering relating to the design and construction

of the runway and retaining pond.  In lieu of an answer, C&S has moved pursuant to F.R.Cv.P. 12(b)(6), to dismiss on statute of limitations grounds (Dkt. #80).

Because  they were made against the original complaint, Rice Lake's motion to dismiss (Dkt. #17) and Central's motion for summary judgment (Dkt. #28) are technically moot.  However, because the parties' clear intent was that the motions survive the filing of the amendment to the complaint (see the aforementioned stipulation at Dkt. #61) and involve personal jurisdictional issues not altered by the filing of the amended complaint, in the interest of judicial economy the Court will consider them.  Plaintiffs' have now moved pursuant to F.R.Cv.P. 15 to file a *second* amended complaint (Dkt. #62).

## DISCUSSION

### The motions to dismiss for lack of personal jurisdiction

As stated, *supra*, the claims against Rice Lake and Central are not affected by plaintiff's second motion to amend.  Hence, they will be addressed first.  "The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state wherein the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Ivoclar Vivadent, Inc.* v. *Ultident, Inc.,* 2005 WL 1421805, *2 (W.D.N.Y. 2005)(*quoting Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996); *see also Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990), *Kirkpatrick* v. *Rays Group*, 71 F.Supp.2d 204, 217 (W.D.N.Y. 1999).

It is undisputed that defendants Rice Lake and Central are non-domiciliaries and that the tortious acts plaintiffs allege they committed ( *i.e.*, the negligent repairs in 1999 and 2002, respectively) occurred outside the State of New York, allegedly causing the crash and injuries inside the State. The Court will therefore apply Section 302(a)(3) of New York's Civil Practice Law and Rules ("C.P.L.R.") to the allegations in this action to determine if it has personal jurisdiction over defendants. If it has, and if necessary, the Court will determine whether the exercise of such jurisdiction comports with due process. *See ibid*. C.P.L.R. §302(a) allows a court in New York to exercise jurisdiction over a non-domiciliary who

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*Rice Lake's motion*

Rice Lake seeks dismissal of the complaint pursuant to F.R.Cv.P. 12(b)(2) for lack of personal jurisdiction. Rice Lake is a Wisconsin company which operates an aircraft maintenance and repair facility out of the Rice Lake Airport in Cameron, Wisconsin. Plaintiffs' claims against Rice Lake allege negligent maintenance and

repair work performed by Rice Lake on the subject aircraft in 1999 which contributed to the engine malfunction and caused the plane to crash.  Plaintiffs did not own the subject aircraft in 1999.  The work referred to in the complaint was performed by Rice Lake in Wisconsin for the previous owner, a Wisconsin resident.

Although they initially claimed to have no connection to New York by way of either personal or business transactions, the current owner of Rice Lake later recalled an instance where an employee traveled to the Genesee County Airport in Batavia, N.Y. on two occasions in 2004.[2]  The employee stayed in New York for approximately six days to perform work on the aircraft of a single customer.  This was characterized as an established customer from Wisconsin who was in New York when the aircraft had been damaged and sought out Rice Lake to do some of the repairs there.  Rice Lake's fee for its portion of the New York repairs totaled approximately $9,200.00.  As an additional contact, the previous owner of the company stated that, with respect to the charter business they conducted before November 2003, he recalled possibly one charter flight that went to New York.  Rice Lake also maintains a website which can conceivably be accessed by anyone around the world, but does not affirmatively direct any of its activity or marketing to New York.  Other unrelated websites utilize hyperlinks that can direct people to Rice Lake's site, but Rice Lake maintains no control over these websites.  Rice Lake urges that these limited contacts are not sufficient to confer personal jurisdiction.  With respect to C.P.L.R. §302(a)(3)(i), Rice

---

[2] This recollection occurred after plaintiffs had filed their responsive papers which revealed further contacts.

Lake claims that it does not regularly do or solicit business, engage in a persistent course of conduct or derive substantial revenue from activity in New York.   With respect to C.P.L.R. §302(a)(3)(ii), although Rice Lake admits that it derives substantial revenue from interstate or international commerce, it disputes that it should have reasonably expected that the work it performed on the subject aircraft for the aircraft's previous owner could have consequences in New York.

The Court is obligated to view the allegations as plaintiff has stated them.

> "While plaintiff bears the ultimate burden of establishing jurisdiction over defendant by a preponderance of the evidence if such is raised at trial, in cases like this where jurisdiction is challenged prior to discovery, plaintiff may overcome the challenge simply by making a good faith pleading to that effect. *See Jazini* v. *Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir.1998).  In making this *prima facie* jurisdictional determination, the Court is to consider the pleadings and affidavits in the light most favorable to plaintiff. *See Ball* v. *Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990).  Inasmuch as no discovery has been conducted herein, the truth of plaintiff's allegations will be assumed for purposes of the jurisdiction issue pursuant to FRCvP 12(b)(2) and doubts will be resolved in plaintiff's favor, notwithstanding a controverting presentation by defendant. Hoffritz for *Cutlery, Inc.* v. *Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).  However, 'vague and generalized allegations ∗∗∗ are insufficient to make a *prima facie* showing of jurisdiction over an out-of-state defendant.' *Hennigan* v. *Taser Int'l, Inc.,* 2001 U.S. Dist. LEXIS 1857, at *7 (S.D.N.Y. Feb. 23, 2001)."

*Ivoclar Vivadent, supra, at *2.*

In their Amended Complaint, plaintiffs set forth no facts asserting New York's long-arm jurisdiction over Rice Lake.  However, in their papers in response to Rice Lake's motion, plaintiffs urge that Rice Lake's contacts with New York are sufficient to confer personal jurisdiction, or at least to warrant a denial of a pre-discovery motion to dismiss.  "[A] plaintiff may defeat a motion to dismiss by making a *prima facie* showing of jurisdiction either through 'legally sufficient allegations of jurisdiction' in the pleadings [citation omitted] or through its own affidavits and supporting materials." *Kirkpatrick* v. *Rays Group,* 71 F.Supp.2d 204, 217 (W.D.N.Y. 1999) (*citing Marine Midland Bank, N.A.* v. *Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

Plaintiffs contend that the instances of New York contact to which Rice Lake has admitted are more substantial than it has characterized.  For example, plaintiffs submitted an affidavit from Jeffery M. Boshart, the president of the aircraft services company at the Genesee County Airport, in relation to the instance of repair for the purported 'established Wisconsin customer'.  Boshart stated that the customer for whom the service was provided was a domestic corporation with its offices in Rochester, N.Y., that his company was hired by Rice Lake to assist in some repairs and billed them for their services in the amount of $4,011.76 [3], that either the New York company or their insurer was the party that hired Rice Lake, that the work was performed in New York at the direction (and not merely with the assistance) of the Rice Lake employee, that Rice Lake wanted the aircraft to remain in New York while

---

[3] It is unclear to the Court whether this is in addition to the $9,200.00 that Rice Lake has admitted it received for these services.

awaiting the return of the parts (that had been removed and shipped to various other states for overhaul), so it leased hanger space for a period of approximately one month and was directly billed for such space in the amount of $500.00 (*see also* fn.3, *supra)* and that a Rice Lake employee may have flown the aircraft from New York back to Wisconsin after the repairs were complete.

Plaintiffs also allege that Rice Lake's internet activity and trade magazine advertising are more global than Rice Lake admits.  With respect to the website, they submit that it is an "interactive site" and not merely one that provides information. They also point to a number of links, references and promotional materials which cast a much broader advertising net than Rice Lake suggests.  For example, Rice Lake belongs to the marketing program for an aircraft fuel corporation (AvNet) that provides it with marketing services such as national advertising, promotional materials and exposure at major industry trade shows.  They also market themselves as an official service center ("Factory Service Center") for a type of aircraft which is known to be owned and operated worldwide (the TBM-700 & TBM-800) and even advertise their consulting services to anyone considering the purchase of such aircraft.  Further, Rice Lake holds FAA issued repair station and air carrier certificates which allows it to operate throughout the United States.  Plaintiffs claim that these contacts, coupled with the consideration of the nature of the aircraft and the range of its fuel load establish jurisdiction over Rice Lake under either subsection of C.P.L.R §302(a)(3).

Viewing the pleadings and all of the evidence submitted in support of and in opposition to the motion in a light most favorable to plaintiffs, the Court finds that plaintiffs have made a *prima facie* showing of jurisdiction under C.P.L.R. §302(a)(3). The Court notes that, even without the benefit of meaningful discovery in this case, plaintiffs have countered Rice Lake's initial claim of no contact with concrete evidence of a presence in New York more substantial than Rice Lake initially disclosed. One wonders what more evidence might be elicited, given the opportunity to conduct meaningful discovery.   Whether additional evidence of Rice Lake's interstate business practices would make it reasonable for them to expect to be subject to suit here is also appropriate to the extent that it may reveal an intent to do business nationwide. *See Crair* v. *Saxena*, 277 A.D.2d 275, 276, 715 N.Y.S.2d 739, 740 (2d Dept. 2000) (defendant expected or reasonably should have expected consequences in New York resulting from the intended distribution of the product nationwide, which necessarily would include New York).

The Due Process test for personal jurisdiction has two components — the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metropolitan Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).   For purposes of the minimum contacts inquiry, a distinction is made between "specific jurisdiction" and "general jurisdiction."   Specific jurisdiction exists when the subject matter of the suit arises out of, or relates to, the defendant's contacts with the forum state.   General jurisdiction is based on the defendant's general business contacts with the forum state where the subject matter of the lawsuit is unrelated to those contacts, as is the

case presently before the Court.   *Id.* at 568 (*citing Helicopteros Nacionales de Colombia, S.A.* v. *Hall,* 466 U.S. 408 at 414-16 & fns. 8-9 (1984).   Because general jurisdiction is based on contacts not related to the events giving rise to the suit, in analyzing a party's minimum contacts, courts impose a more stringent test. *Ibid.*

In order to comport with Due Process in this regard, plaintiffs in this case will be required to demonstrate Rice Lake's "continuous and systematic general business contacts" with New York. *Metropolitan Life, supra at 568.*   At first blush, the Court is inclined to hold that the minimum contacts requirement has not been met in this case.   However, because there has been no discovery on this issue and because plaintiffs' pre-discovery investigation bore fruit in establishing contacts previously denied by Rice Lake, the Court will allow additional time for discovery on this issue. Because a finding of minimum contacts is necessary before proceeding to the reasonableness inquiry, an assessment of reasonableness[4] need not be made at this time.[5]   "Eventually, of course, the plaintiff[s] must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial.   But until trial or such time as a hearing is held, plaintiffs' *prima facie* showing suffices,

---

[4] With respect to the reasonableness inquiry, a court asks whether it is reasonable under the circumstances of the particular case. *Metropolitan Life, supra at 568.*   They are interrelated in the sense that a strong showing of minimum contacts may lessen the burden of establishing the reasonableness standard.   Further, the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, but may be defeated where the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Metropolitan Life, supra at 568* (*citing Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 477 (1985).

[5] The Court will state, however and as discussed *infra*, that the interstate nature of an aircraft and its fuel load will not *per se* be found to constitute reasonableness.

notwithstanding any controverting presentation by the moving party, to defeat the motion.". *Marine Midland Bank, supra.* Therefore, Rice Lake's motion to dismiss for lack of personal jurisdiction is DENIED, without prejudice.

   *Central's motion*

   Central also seeks dismissal of the complaint pursuant to F.R.Cv.P. 56 for lack of personal jurisdiction. Central is a Wisconsin corporation located in Watertown, Wisc. and engaged in the business of aircraft painting, refinishing, maintenance and inspection. On August 23, 2002 Central performed work on plaintiffs' aircraft which included stripping and painting. This work was performed at their Watertown location. Plaintiffs claim Central negligently performed the aforementioned work and that such negligence caused and/or contributed to the crashing of the aircraft. In its motion, Central submits evidence by way of an affidavit from one of its principal shareholders, Randall Effinger, stating the following as relating to Central's New York contacts. Central is not authorized or registered to do business in New York, nor has it ever contracted to supply good or services here. It has never employed New York residents or maintained an office or any goods within the state. The Watertown, Wisc. location is its only place of business and all of its work is performed there. Further, it has never owned or leased any real or personal property here and does not advertise for its services outside of the Watertown area[6] other than maintaining a single line in that area's "yellow pages". Central argues that this establishes that

---

[6] Unlike Rice Lake, it has no website.

"there are undisputed facts demonstrating the absence of jurisdiction". (Dkt. #32 — Central's Memorandum of Law at p.3 — *citing Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 192, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990)).

Although Central's motion is essentially the same as Rice Lake's in that it seeks dismissal prior to discovery, it is filed as one for summary judgment simply because Central has interposed an answer.  The Court's analysis, however, with respect to plaintiffs' required showing will be the same, to wit — since jurisdiction is challenged prior to discovery, plaintiffs may overcome Central's challenge simply by making a good faith showing to that effect, and in making this *prima facie* jurisdictional determination, the Court shall consider the pleadings and affidavits in a light most favorable to plaintiffs. *Ivoclar Vivadent, supra, at* *2.

Plaintiffs' Amended Complaint does not set forth facts upon which to confer personal jurisdiction over Central in New York.  However, and as stated *supra*, plaintiffs may make a *prima facie* showing of jurisdiction either through allegations in the pleadings or through affidavits and supporting materials in response to the motion. *Kirkpatrick, supra.*  Plaintiffs' response to Central's motion reveals that their claim of jurisdiction over Central is different than their claim of jurisdiction over Rice Lake in that it alleges no New York contacts and relies solely upon C.P.L.R. §302(a)(3)(ii).  The sole allegation that Central derives substantial revenue from interstate commerce lies in plaintiff J. Michael Maloney's statement that he became aware of Central through other Illinois residents who either had their aircraft painted, or know of aircraft being painted, by Central at the Watertown facility.   They

essentially admit that Central is a "mom and pop" organization, and make no allegations, or even intimations, that Central has any New York connections. Instead plaintiffs argue that, because information regarding Central's possible interstate commerce activities are in the exclusive control of Central, at least limited discovery should be allowed on this issue. (Dkt. #39 — Plaintiffs' Memorandum and Brief in Opposition at p.5).

The rest of plaintiffs' jurisdictional theory is as follows. Central is in the business of repairing aircraft and the inherent interstate nature and fuel load capabilities of any aircraft that Central may repair or service creates a reasonable expectation that said aircraft will fly into New York (or anywhere that its fuel load will take it) where it can have consequences thereby subjecting it to the jurisdiction of that location. The J. Michael Maloney affidavit states that his aircraft which is the subject of this litigation had a non-stop fuel range of 1,000 nautical miles and that the distance between Watertown and the location of the crash is 500 nautical miles, well within that range.

The *Peterson* case plaintiffs cited in support of their request for additional discovery on this issue does not involve, as plaintiffs assert, "complex issues inherent in an aircraft accident". The plaintiff in *Peterson* was burned while using a garden torch, the fuel for which was manufactured by the defendant, a Connecticut corporation. In an action to recover damages for personal injuries and loss of services, the plaintiff and his wife sued the Connecticut corporation and six other defendants allegedly involved in the manufacture, assembly and sale of the garden torch.

*Peterson* v. *Spartan Indus., Inc.*, 33 N.Y.2d 463, 465 (1974.).  In that case, defendant had made a motion to dismiss for lack of jurisdiction and the court had held the motion in abeyance and ordered a hearing on the jurisdictional issue when the defendant sought a protective order from plaintiffs' discovery demands (made in preparation for the hearing) seeking information that the plaintiffs claimed may help confer jurisdiction.  *Ibid.*  The court held that plaintiffs need not make a *prima facie* showing of jurisdiction in order to obtain the discovery needed to confer jurisdiction. *See Peterson, supra* at 467 (The opposing party need only demonstrate that facts 'may exist' to defeat the motion to dismiss and are therefore entitled to the disclosure needed to defeat the motion.)

The Court in *Peterson* acknowledged that New York's C.P.L.R. provision in this regard was modeled after FRCvP 56(f) which states that "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had ***."  At best, the *Peterson* case and Rule 56(f) would allow plaintiffs to establish only that Central derives substantial revenue from interstate commerce.  It would not confer jurisdiction or allow plaintiff to defeat Central's motion.

In order to confer jurisdiction, the Court would also have to accept plaintiffs' position that the inherent interstate nature and capabilities of an aircraft *per se* create a reasonable expectation in anyone servicing such aircraft that they would be subject

to the personal jurisdiction of any state within the non-stop fuel tank range of the aircraft they service[7].  Plaintiffs provide no legal support for this holding and this Court is unwilling to so extend New York's long-arm jurisdiction.

The *Reynolds* case, cited by plaintiffs does not support a finding that the inherent nature of an aircraft can confer jurisdiction.  The defendant in *Reynolds* manufactured, rebuilt and sold aircraft engine parts worldwide and had a substantial affiliation with the New York market through its direct and indirect sales to New York businesses.  *Reynolds* v. *Aircraft Leasing, Inc.,* 194 Misc.2d 550, 554, 756 N.Y.S.2d 704, 708 (Queens Co. 2002).  It was this inherent nature of the defendant's business activities that created the reasonable expectation pursuant to C.P.L.R. §302(a)(3)(ii) and not the inherent nature of the aircraft itself.  *Reynolds, supra* at 555 ("The evidence in this case warrants a finding that [defendant's] intended distribution activities made it foreseeable that its products would be found in New York, and that its alleged negligent overhaul and manufacture of carburetors in Washington, and sales to other states as well as New York, could have direct and expected consequences in New York.").  Nevertheless, the *Reynolds* court also found jurisdiction appropriate under C.P.L.R. §302(a)(3)(i).  *Ibid.*

Viewing the pleadings and all of the evidence submitted in support of, and in opposition to, the motion in a light most favorable to plaintiffs, the Court finds that plaintiffs' allegation of jurisdiction over Central are vague and generalized and fail to

---

[7] C.P.L.R. §302(a)(3)(ii) requires a finding of reasonable expectation *and* substantial interstate commerce.

establish a *prima facie* showing of jurisdiction.[8]   Central's motion for summary judgment is therefore GRANTED.

## Defendant C&S's motion to Dismiss

C&S has moved for dismissal pursuant to FRCvP 12(b)(6) on the ground that plaintiffs' claims against it fail to state a claim upon which relief can be granted because plaintiffs filed the Amended Complaint adding C&S as a defendant herein after the expiration of the applicable statutory period of limitations.[9]

*The limitation period*

Statute of limitations issues are substantive and are therefore governed in this case by New York law.  *Guaranty Trust Co.* v. *York*, 326 U.S. 99 (1945); *Erie R. R. Co.* v. *Tompkins*, 304 U.S. 64 (1938); *see also Hart* v. *Bates*, 897 F. Supp. 710, 712 (E.D.N.Y.,1995).  Plaintiffs' claims against C&S are for personal injury and property damage and, as such, are subject to New York's three-year statute of limitations. C.P.L.R. §214(4) & (5).  The time when the limitation period begins to run is the date of the injury.  *See Jackson* v. *L.P. Transportation, Inc.*, 72 N.Y.2d 975, 976 (1988); *Yawn* v. *Regional Transit Service*, 61 A.D.2d 1126, 1127, 402 N.Y.S.2d 894, 896 (4th Dept. 1978).  In this case the date of the injury is the date of the aircraft accident, to wit — September 16, 2002.

---

[8] In light of this finding, a Due Process analysis is not necessary.

[9] A motion under FRCvP 12(b)(6) is appropriate because expiration of a statutory period of limitations is an affirmative defense under FRCvP 8(c).  *Ghartey* v. *St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also, Employees Committed For Justice* v. *Eastman Kodak Co.,* 407 F. Supp. 2d 423, 438 (W.D.N.Y. 2005)

In New York, an action of this nature is commenced upon the filing of the summons and complaint.  C.P.L.R. §304.  Such is considered "filed" upon the delivery of the summons and complaint to the clerk of the court in the county in which the action is being brought together with any required fee.  *Ibid.*  Without extension or toll, therefore, plaintiffs had until September 16, 2005 to file the instant diversity suit against C&S with the Clerk of this Court — which it obviously did not do.

*Are there any tolling periods?*

Under New York law[10], a motion for leave to amend a complaint to add a defendant tolls the statute of limitations until the entry of the order deciding the

---

[10] The Court rejects plaintiffs' argument that federal law be applied for purposes of tolling of the statute or determining when the action is deemed to have been commenced.
"It is well established that the doctrine enunciated in *Erie R.R. Co.* v. *Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applies to the manner in which a diversity action is considered commenced for purposes of state statutes of limitations.  In *Ragan* v. *Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), the Court held that the Kansas statute requiring service of process to commence an action, not Fed.R. Civ.P. 3, controlled in a diversity action.  "Since [the] cause of action is created by local law, the measure of it is to be found only in local law $_{***}$ .  It accrues and comes to an end when local law so declares." *Id.* at 533, 69 S.Ct. at 1234.  This decision was reaffirmed by the holding in *Walker* v. *Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), that "in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction."  *Id.* at 752-53, 100 S.Ct. at 1986.  Because Fed.R.Civ.P. 3 does not "purport[] to displace state tolling rules for purposes of state statutes of limitations," *id.* at 750-51, 100 S.Ct. at 1985, state rules integral to the state statute of limitations govern in diversity actions.  *See* 2 Moore's Federal Practice ¶ 3.09[1], at 3-78 to 3-80 (1989).  *Cf. Hanna* v. *Plumer,* 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965) (Fed.R.Civ.P. 4(d)(1) (method of service) "unavoidabl[y]" clashes with state rule and must be applied in diversity action; state law would apply if "no Federal Rule $_{***}$· covered the point in dispute")."
*Converse* v. *Gen. Motors Corp.,* 893 F.2d 513, 515 (2d Cir. 1990)

motion (where motion papers include a copy of the proposed supplemental summons and amended complaint). *Perez* v. *Paramount Comm'ns.*, 92 N.Y.2d 749, 754 (1999). Plaintiffs moved herein to add C&S as a defendant on September 15, 2005, one day before the expiration of the statutory period of limitations. A copy of the proposed amended complaint was attached.[11] This tolled the statute of limitations until the entry of the order granting the motion. Such order was filed on November 3, 2005. As of November 3, 2005 — when the statute began to run again — plaintiffs had one day left on the statute of limitations. They did not, however, file the amended complaint until December 16, 2005, some 42 days later. Had this been the only toll afforded plaintiffs, the complaint would not have been timely. The Court rejects plaintiffs' argument that the inadvertent failure to file the amended complaint with the order should be deemed an excusable or waivable defect.

If applicable, a toll is also provided pursuant to C.P.L.R. §214-d which, in relevant part, requires the filing of a Notice of Claim prior to the filing of a suit for personal injury or property damage asserted against an engineering firm which is based upon the professional performance, conduct or omission by such licensed engineering firm occurring more than ten years prior to the date of such claim. The Notice of Claim must be served in the same manner as normally permitted for personal service of a summons on a person, partnership or professional corporation and must be filed, together with the proof of service, within 30 days in any court of

---

[11] It is not the procedure in federal court to attach a summons, as such is issued by the Clerk of the Court once the complaint has been filed.

the state where the action may be commenced.  C.P.L.R. §214-d(1).  The applicable statute of limitations is then tolled for 120 days from the date of service of this Notice of Claim.  C.P.L.R. §214-d(3).

Plaintiffs claim that C.P.L.R. §214-d applies to their case because they have made allegations against C&S regarding negligent professional work it performed more than 10 years prior to the date they originally filed suit herein (which date they assert is the accrual of the claim and not the date of the injury).  More particularly, they state that when they filed the original complaint in 2004 they were unaware of C&S's involvement in the airport construction project.  Because C&S may have performed some or all of its services prior to 1994 (more than 10 years prior to the date they filed their original complaint), C.P.L.R.  §214-d applies.  Plaintiffs are only partially correct in their calculation of the accrual of the claim for purposes of §214-d.  While normally, an action to recover damages for negligence accrues upon the date of an injury, for purposes of C.P.L.R. §214-d the date that the claim accrues is the last date that a suit may be filed against a party and not the date of the injury.  *See, Rogan* v. *Sear-Brown Group*, 183 Misc.2d 364, 702 N.Y.S.2d 795 (Monroe Co. 2000).  The Court finds that, because plaintiffs could have filed suit against C&S as late as September 16, 2005, *this* is the date the claim accrued for purposes of §214-d and from which the calculations under §214-d shall be made.  Hence, any work performed by C&S prior to September 16, 1995 would trigger plaintiffs' obligation to comply with the requirements of C.P.L.R. §214-d.

The amended complaint alleges, *inter alia*, that C&S is comprised of one or more professional engineers, is licensed to practice engineering and holds itself out as having expertise in the area of designing and engineering of airport infrastructures, that , as a result thereof, they were hired "on or about 1992" to create the plans, specifications and design for the airport runway and retaining pond adjacent thereto where plaintiff J. Michael Maloney's accident occurred.  Accepting these allegations in a light most favorable to plaintiffs, the Court holds that they are entitled to the tolling provisions of C.P.L.R. §214-d.  The problem is that the amended complaint does not allege compliance with C.P.L.R.  §214-d, as required.  However, C&S has not moved to dismiss it on those grounds.[12]

Plaintiffs served their C.P.L.R. §214-d notice by personal service on C&S on September 13, 2005 and thereafter filed the Notice with the Clerk of the County where C&S resides.[13]  The statute of limitations, therefore, was tolled until January 11, 2006.  The amended complaint was filed well within this time period.  Even if the amended complaint were found to be insufficient because it failed to allege compliance with §214-d, the motion to file the second amended complaint was also filed well within

---

[12] Had they done so, the Court would have dismissed the amended complaint for non-compliance and afforded plaintiffs a 6-month grace period within which to comply and re-file. *See* C.P.L.R. §205(a); *Kretschmann* v. *Board of Educ. of Corning Painted Post School Dist.*, 187 Misc.2d 246, 720 N.Y.S.2d 916 (Stuben Co.  2001).

[13] Plaintiffs have demonstrated that they attempted to file this Notice as early as 7 days after service, twice delivering it into the hands of the Onondaga County Clerk.  They have submitted proof that, while the Notice was not filed until the 36th day, the Onondaga County Clerk actually received it (for the second time), along with the requisite fee within the 30-day period.  The Court holds that this constitutes sufficient filing under C.P.L.R. §214-d.  *Compare* C.P.L.R. §304.

the tolled period, and was therefore timely.  Further, the motion to amend also tolls the statute of limitations until resolved.  C&S's motion to dismiss is therefore DENIED.[14]

**Plaintiffs' Motion to File a Second Amended Complaint**

Plaintiffs' motion in this regard seeks to better particularize their cause of action against C&S for engineering and design work allegedly performed prior to September 16, 1994 and to comply with C.P.L.R. §214-d.  Plaintiffs assure that, other than some minor typographical errors, the proposed second amended complaint does not alter the claims asserted against the other defendants.  Only C&S opposes the motion.

Plaintiffs aver that they did not discover C&S's involvement in the engineering, design and construction of the airport project which is a subject of their suit until late in the summer of 2005.  They further assert that they were unable to determine if C&S's work had occurred more or less than 10 years before they filed suit on September 16, 2004 and were therefore forced to comply with C.P.L.R. §214-d in the event that the work was performed prior to that date.  They then made a motion in this Court to amend the complaint to add C&S and, at the same time, began their compliance with §214-d.  The Notice of Claim was served and filed (*see also* fn.13,

---

[14] If, during the course of discovery herein, it is established that C&S's work on the airport reconstruction project substantially occurred *after* September 16, 1995, this may affect the applicability of §214-d and, hence, the toll of the statute of limitations.  This Court will entertain this issue if or when it arises.

*supra*) and, after the requisite 90 day period, the instant motion to file the second amended complaint was made.

FRCvP 15(a) states in pertinent part that, when a party seeks to amend the party's pleading pursuant to leave of court, such leave "shall be freely given when justice so requires." It is well settled that leave to amend is within the discretion of the Court and is generally granted in the absence of (1) undue delay, (2) dilatory purposes or bad faith, (3) undue prejudice to the opposing party or (4) futility of the amendment. *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Foman* v. *Davis*, 371 U.S. 178, 182 (1962); *SCS Communications, Inc.* v. *Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004).

Plaintiffs urge that, once they discovered C&S's involvement, they acted quickly in complying with the requirements of C.PL.R. §214-d (*i.e.,* no undue delay). They assure the Court that the motion is not being made for dilatory purposes or in bad faith and that C&S would not be prejudiced should the Court grant the motion, as the action is still in the pre-discovery stage and all other defendants have no objection to the motion. C&S disputes none of this and argues only that the motion should be denied because an amendment of the complaint would be futile in that it would still be dismissed as barred by the statute of limitations.

C&S acknowledges that the standard to be used by the Court in determining whether a proposed amendment is futile is the same standard of review as is used in a FRCvP 12(b) motion to dismiss.

> "The determination whether a proposed amendment is futile is made under the same standard as that used to consider whether a claim would be subject to a motion to dismiss. *See Hampton Bays Connections, Inc.* v. *Duffy,* 212 F.R.D. 119, 123 (E.D.N.Y.2003) (*citing A.V. By Versace, Inc.* v. *Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 666 (S.D.N.Y.2001)). Thus, the court 'must view the claim in the light most favorable to the moving party and determine whether there is a colorable claim for relief.' *Santiago* v. *Steinhart,* 1993 WL 410402, *2 (S.D.N.Y.1993)."

*Bolia* v. *Mercury Print Productions, Inc.*, 2004 WL 2550274, *5 (W.D.N.Y. 2004).

The reasons for C&S's argument on futility are essentially the same as they were for its motion to dismiss — *i.e.,* that the claim is barred by the statute of limitations and that C.P.L.R. §214-d does not apply to plaintiffs' claims against it. Viewing plaintiffs' proposed second amended complaint in a light most favorable to plaintiffs and for the reasons already discussed in the section which denied C&S's motion to dismiss, *supra,* the amendment would not be futile.  Plaintiffs' motion to amend is therefore GRANTED.

## **CONCLUSION**

For the reasons stated above, Rice Lake's motion to dismiss (Dkt. #17) is **DENIED**; Central's motion for summary judgment (Dkt. #28) is **GRANTED**;  C&S's motion to dismiss (Dkt. #80) is **DENIED** and; plaintiffs' motion for leave to file a second amended complaint (Dkt. #62) is **GRANTED**.  Plaintiffs are directed to file and serve the second amended complaint within 5 days of the entry of this Memorandum and Order and the remaining defendants shall answer within 10 days after service of the second amended complaint upon them.  See FRCvP 15(a).

**SO ORDERED.**

DATED:      Buffalo, N.Y.

            July 27, 2006

                                    _/s/ John T. Elfvin_____
                                    JOHN T. ELFVIN
                                    S.U.S.D.J.